UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:01CR126(SRU) |
| | : | |
| KENNETH BRICKHOUSE | : | April 24, 2008 |

### _____ GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)

On March 4, 2008, the defendant, Kenneth Brickhouse, filed a motion for resentencing, pursuant to 18 U.S.C. § 3582(c)(2), seeking to reduce his sentence under the recent amendments to the cocaine base ("crack") Guidelines.  The defendant claims he is entitled to a two-point reduction under the amended Guidelines and further requests a full resentencing under *Kimbrough v. United States*, 128 S. Ct. 558 (2007).  Although the defendant is eligible for a two-level reduction in his guideline range under the crack amendments, the Court should exercise its discretion not to grant such a reduction given the public safety concerns presented by the circumstances of the offense and the defendant's prior criminal conduct.  Should the Court choose to grant the defendant a reduction, its authority to do so is limited to a two-level reduction under the Guidelines, as § 3582(c)(2) does not authorize a full resentencing here.

## I.    BACKGROUND

On June 6, 2001, a federal grand jury sitting in Bridgeport, Connecticut, returned a three-count indictment against the defendant charging him in Count One with knowingly possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), in Count Two with knowingly using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), and in Count Three with being a prior

convicted felon who knowingly possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On October 9, 2001, the defendant pled guilty to all three charges.

The offense of conviction occurred on March 22, 2001, when the defendant was apprehended by Stamford police in possession of 3.7 grams of crack immediately after engaging in a hand-to-hand drug transaction.  PSR ¶ 5.  The defendant attempted to flee from the police, but was caught after a brief pursuit.  PSR ¶ 5.  In addition to the crack, the defendant was carrying a loaded .40 caliber Taurus handgun and $359 in cash.  PSR ¶ 5.  Brickhouse had previously been convicted of a felony sale of narcotics charge in Connecticut Superior Court.  PSR ¶ 6.

Although only 21 years old when arrested for the instant offense, the defendant had a lengthy criminal history.  By then, he had three prior arrests for the sale of crack cocaine.  PSR ¶¶ 20-22.  The defendant's first two arrests resulted in convictions for possession of narcotics.  PSR ¶¶ 20-21.  The defendant's third arrest, which involved 18.5 grams of crack cocaine, resulted in a conviction for sale of narcotics.  PSR ¶ 22.

After the defendant's first arrest on January 18, 1996 at the age of 15, he was released into an intensive supervision program which featured electronic monitoring.  PSR ¶ 20.  He severed the electronic bracelet, however, and was not apprehended until February 7, 1996.  PSR ¶ 20.  After the defendant's apprehension, he again was placed in the intensive supervision program and required to wear an electronic monitor.  PSR ¶ 20.

On March 20, 1996, the defendant was arrested for his second drug offense, which involved his possession of approximately two grams of crack cocaine.  PSR ¶ 21.  During this arrest, he punched the arresting officer in the face and attempted to flee.  PSR ¶ 21.  On March

2

24, 1996, he again cut off the electronic bracelet after being sentenced to a juvenile detention

facility on March 21, 1996.  PSR ¶ 20.  He surrendered two days later and was detained at the

facility until August 23, 1996.  PSR ¶ 20.

Less than four months after his release from the juvenile facility, the defendant, then 16

years old, was arrested on December 2, 1996, for possessing with the intent to sell 18.5 grams

(net) of crack cocaine.  PSR ¶ 22.  Following this arrest, the defendant failed to appear in court

and was subsequently convicted of failure to appear.  PSR ¶ 23.  During the preparation of the

presentence report concerning his December 1996 arrest, the defendant told a probation officer

that "when he got out, he wouldn't care, he would probably rob, steal, or even kill."  PSR ¶ 22.

In November 1999, the defendant was paroled.  PSR ¶ 23.  On March 2, 2000, he

absconded from parole.  He was arrested on May 2, 2000 for selling drugs in Norwalk,

Connecticut, and was returned to custody on May 3, 2000.  PSR ¶¶ 23, 27.  On January 19, 2001,

he was discharged from the sentence relating to his December 1996 arrest.  PSR ¶ 23.  At the

time of his discharge, the defendant had pending criminal charges stemming from the May 2,

2000 Norwalk arrest for selling narcotics.  PSR ¶ 23.  He was released on bond pending trial on

those charges.  PSR ¶¶ 23, 27.

Despite his recent discharge from incarceration and his release on bond pending trial on

other charges, the defendant was arrested on March 15, 2001 while driving in a stolen car.  PSR ¶

28.  To avoid arrest, the defendant engaged police in a high-speed pursuit, driving through

several stop signs and red lights.  PSR ¶ 28.  During his arrest, he again struggled with the

arresting officers.  PSR ¶ 28.  A week later, on March 22, 2001, he was arrested on the current

offense.  PSR ¶ 5.  At that time, he possessed approximately 3.7 grams (net) of crack cocaine and

was carrying a loaded semi-automatic firearm.  PSR ¶ 5.

On another matter, the defendant provided information to law enforcement relating to two murders.  Specifically, the defendant told law enforcement officers during an interview that he had sold another individual a firearm in August 1996, after the defendant's discharge from the juvenile facility.  PSR ¶ 25-26.  The defendant said that he believed the firearm was used to murder an 18-year-old woman and her six-month old son on September 12, 1996.  The woman and her son were found shot to death in a car in Stamford, Connecticut.  She was found slumped over the steering wheel of the car with a .25 caliber bullet wound to her head, and her six-month-old child was found strapped into a car seat with two .25 caliber bullet wounds to the head.  PSR ¶ 25.  The defendant said that in addition to having supplied the gun used in the killings, he also lied under oath about the matter.  PSR ¶ 26.  A polygraph examination administered on April 4, 2001 showed that this information was indicative of deception.  PSR ¶ 26.

As calculated in the PSR, the base offense level applicable to Count One was 22 based on a quantity of 3.7 grams of crack.  PSR ¶ 11.  With a three-point reduction for acceptance of responsibility and a criminal history category VI, the guideline range applicable to Counts One and Three was 63 to 78 months.  PSR ¶¶ 18, 55.  Because the conviction on Count Two required a 60 month consecutive sentence, the PSR calculated the guideline to be 123 to 138 months.  PSR ¶ 55.  On January 24, 2002, the Court sentenced the defendant principally to 72 months on Counts One and Three, to run concurrently, and a 60-month mandatory consecutive sentence on Count Two, for a total term of incarceration of 132 months.

Under the Guidelines as amended, the applicable guideline range for Counts One and Three would be 51 to 63 months.  Taking into account the mandatory 60 month consecutive

sentence, the amended guideline range would effectively be 111 to 123 months in prison. *See* Addendum to PSR, dated March 6, 2008.

## II.    DISCUSSION

### A.    The 2007 Amendments to the Crack Guidelines and 18 U.S.C. § 3282(c)(2).

Title 18, United States Code, section 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In Section 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, and articulated the proper procedure for implementing the amendment in a concluded case.[1]  On December 11, 2007, the Commission issued a revised version of Section 1B1.10, which emphasizes the limited nature of relief available under 18 U.S.C. § 3582(c).  *See* U.S.S.G. App. C, Amend. 712. Revised Section 1B1.10(a), which became effective on March 3, 2008, provides, in relevant part:

---

[1] Section 1B1.10 is based on 18 U.S.C. § 3582(c)(2), and also implements 28 U.S.C. § 994(u), which provides:  "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

A guideline amendment may be applied retroactively only when expressly listed in Section 1B1.10(c).  *See, e.g.*, *United States v. Perez*, 129 F.3d 255, 259 (2d Cir. 1997); *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir. 1995); *United States v. McHan*, 386 F.3d 620, 622 (4th Cir. 2004); *United States v. Drath*, 89 F.3d 216, 218 (5th Cir. 1996); *United States v. Dullen*, 15 F.3d 68, 70-71 (6th Cir. 1994); *United States v. Wyatt*, 115 F.3d 606, 608-09 (8th Cir. 1997); *United States v. Cueto*, 9 F.3d 1438, 1441 (9th Cir. 1993); *United States v. Avila*, 997 F.2d 767, 768 (10th Cir. 1993); *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003).

(1)    In General.—In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

(2)    Exclusions.—A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—

   (A)    none of the amendments listed in subsection (c) is applicable to the defendant; or

   (B)    an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.

(3)    Limitation.—Consistent with subsection (b), proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.

The amendment in question in this matter is Amendment 706, effective November 1, 2007, which reduced the base offense level for most crack offenses.[2]  On December 11, 2007, the Commission added Amendment 706 to the list of amendments stated in Section 1B1.10(c) which may be applied retroactively, effective March 3, 2008.  U.S.S.G. App. C, Amend. 713.  *Id.*

In Amendment 706, the Commission generally reduced by two levels the offense levels applicable to crack cocaine offenses.  The Commission reasoned that, putting aside its stated criticism of the 100:1 ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory mandatory minimum penalties, the Commission could respect those mandatory penalties while still reducing the offense levels for crack offenses.  *See* U.S.S.G., Supplement to

---

[2]  Amendment 706 was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

App. C, Amend. 706.  Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range which included the mandatory minimum sentence.  Under the amendment, the Commission has set the offense levels so that the resulting guideline range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities which fall below, between, or above quantities which trigger statutory mandatory minimum penalties.  For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).  Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in the guidelines for crack offenses.  At the high end, the guideline previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more.  That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36.  At the low end, the guideline previously assigned level 12 to a quantity of less than 250 milligrams.  That offense level now applies to a quantity of less than 500 milligrams.

**B.**     **The Court has Discretion Whether to Grant a Sentence Reduction Under 18 U.S.C. § 3582(c)(2) and Should Consider Public Safety Factors.**

The Court may act on a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2) without the defendant's presence.  Section 1B1.10(a)(3) of the Guidelines provides that

"proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant."  In addition, Fed. R. Crim. P. 43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves a reduction of sentence under 18 U.S.C. § 3582(c).  Likewise, given the rules and considering the burdens imposed on producing prisoners incarcerated within the Bureau of Prisons, the federal courts of appeals to address this issue have uniformly held that a defendant has no constitutional or statutory right to be present in connection with a motion filed under § 3582(c).  *See, e.g.*, *Anderson v. United States*, 241 Fed. Appx. 625, 629 (11th Cir. July 18, 2007) (unpublished) ("Under Federal Rule of Criminal Procedure 43(b)(4), a defendant's presence at a § 3582(c) sentence correction proceeding is <u>not</u> required") (emphasis in original); *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (same; hearing not required); *United States v. Tidwell*, 178 F.3d 946, 948-949 (7th Cir. 1999) (same, noting that "a proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution").

Although the defendant may qualify for a reduction in sentence under § 3582(c)(2) and the applicable policy statements of the Commission, a reduction of sentence is not automatic. This Court's discretion is set forth in § 3582(c)(2) itself, which provides: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced.  *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998); *see also United States v.*

*Colon*, 961 F.2d 41, 46 (2d Cir. 1992)(stating that district court, in the first instance, had to determine to what extent, if any, it has authority to apply retroactive amendment and whether it wishes to exercise its discretion to do so).

Similarly, § 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.*, comment. (n. 1(B)(I)); *see also* U.S.S.G. § 1B1.10, comment. (backgr'd) ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). Courts are in agreement on this point. *See United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) (district court permissibly declined to reduce sentence); *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997); *United States v. Coohey*, 11 F.3d 97, 101 (8th Cir. 1993); *United States v. Wales*, 977 F.2d 1323, 1327-28 (9th Cir. 1992).

"Thus, reading § 3582(c)(2) and the Sentencing Guidelines together, the district court must make two distinct determinations before deciding whether to reduce a defendant's sentence under § 3582(c)(2)." *Vautier*, 144 F.3d at 760. First, § 1B1.10(b) directs:

> In determining whether, and to what extent, a reduction in the term of
> imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is
> warranted, the court shall determine the amended guideline range that would have
> been applicable to the defendant if the amendment(s) to the guidelines listed in
> subsection (c) had been in effect at the time the defendant was sentenced . . . .

*Id.* In other words, "the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. In undertaking this first step, only the amended guideline range is changed. All other guideline application decisions

9

made during the original sentencing remain intact."[3] *Vautier*, 144 F.3d at 760.

In the second step, "the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." *Id*. Subject to the limits set forth in § 1B1.10(b), the Court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce the defendant's sentence.

In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in § 1B1.10(b).

### C.    The Extent of Any Sentence Reduction is Strictly Limited.

If this Court decides to reduce a defendant's sentence, the extent of the reduction is

---

[3] The Eighth Circuit has also endorsed and explained at length this two-step procedure. *United States v. Hasan*, 245 F.3d 682, 684-85 (8th Cir. 2001) (en banc) (*citing United States v. Wyatt*, 115 F.3d 606 (8th Cir. 1997)).

In *United States v. Legree*, 205 F.3d 724, 728 (4th Cir. 2000), the court stated that it disagreed with the need for or utility of the two-step method. However, the essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2) reduction of sentence, including consideration of the Section 3553(a) factors, may be presumed from the record. The court did not criticize the underlying proposition that a trial court in fact should consider the guideline range as affected only by the guideline amendment, and should then apply the Section 3553(a) factors in determining whether to reduce the sentence.

strictly limited. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. *See* 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(u). The Commission, in turn, directed in § 1B1.10(b) that, with one exception (where the defendant earlier received a below-guideline sentence), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). An application note adds: "Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)." U.S.S.G. § 1B1.10, comment. (n. 3). Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." *Id*., comment. (n. 3).

### D.    The Court Should Exercise its Discretion and Deny Relief on Public Safety Grounds.

Here, the defendant is eligible for a two-level reduction, but the Court should exercise its discretion and determine that a reduction is inappropriate in light of the § 3553(a) factors. The need for specific deterrence and to protect the public from future crimes of a defendant are two fundamental purposes of sentencing, as set forth in 18 U.S.C. § 3553(a), and they are substantial

considerations in deciding whether to grant the defendant's motion.

The nature of the crimes and the defendant's extensive criminal history simply cannot be ignored. The circumstances of the crimes of conviction raise public safety concerns, given that the defendant was involved not only in the distribution of narcotics, but also in the use and carrying of a loaded semi-automatic firearm during and in relation to that drug-trafficking offense. Moreover, the defendant's criminal history was and remains a serious concern. The sheer number of criminal history points he amassed at a young age is remarkable and must be weighed in the balance when judging the public safety concerns raised by reducing the defendant's sentence. In imposing sentence, the Court recognized the concerns raised by the defendant's prior criminal record and his undeterred recidivism. Sentencing Transcript at 40-41, attached hereto at Exhibit A ("S. Tr. ___."). The Court told the defendant that "the fact that you used violence concerned me a great deal," as did the fact that he had committed crimes while under court supervision. S. Tr. 41. The Court also expressed concern over the speed with which the defendant returned to drug dealing after being released from incarceration or other restrictions. S. Tr. 40-41. Indeed, the Court noted that the defendant's youth at the time of some of his offenses worked to his benefit vis-a-vis the Guidelines, stating:

> I am aware that some of your crimes occurred when you were quite young. You should be aware that I think had those crimes occurred when you were older you would be a career offender and you would be facing a dramatically longer sentence than the one you are today.

S. Tr. 41-42.

Moreover, the Court should weigh the fact that the defendant said he had sold a firearm to another individual who the defendant believed used it to commit the execution-style murders of a

young woman and her six-month-old child.  The defendant also said he lied under oath about his knowledge of this incident.  Even these admissions were deemed to be deceptive in an April 4, 2001 polygraph examination.  PSR ¶ 26.  The role the defendant himself described is highly troubling from a public safety perspective.  The Court should not overlook the significance of the defendant's story, as it highlights the danger posed by the defendant.  At such a young age, the defendant was so deeply involved in criminal activities that, according to him, he was supplying firearms and then committing perjury knowing that the firearm had been used in a double homicide.[4]

These public safety concerns cannot simply be written off to a difficult upbringing, which, while regrettable, does not excuse the defendant's substantial criminal record or negate the danger to the community presented by the defendant.  Accordingly, despite the fact that he does not have a disciplinary record since entering federal prison, the public safety factors here counsel against granting the defendant a sentence reduction.

**E.**     ***Booker* and *Kimbrough* Do Not Authorize a Full Resentencing.**

The defendant does not limit his motion to a request for a two-level reduction.  He also argues that the Court should conduct a full resentencing and reexamine the entire sentence consistent with the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558

---

[4] Although the government agreed at sentencing that the Court should not take the murders into consideration in imposing sentence, it did advocate that the Court should consider the fact that the defendant said he had sold a firearm to another individual at the age of almost 16 and that he had testified falsely about the matter even though he believed the firearm was used in the murders.  *See* S. Tr. 8-12; Government's Supplemental Sentencing Memorandum, dated January 22, 2002, at 1-2.  At sentencing, the Court said it would not take into account the two paragraphs of the PSR relating to the murders.  S. Tr. 6.  For the reasons argued at sentencing, the Government continues to believe that this information raises significant public safety concerns and should be considered in connection with this motion.

(2007). The fundamental underpinnings of this argument are that the Guidelines were made advisory by *United States v. Booker*, 543 U.S. 220 (2005), and *Kimbrough* specifically permitted sentencing courts to consider the disparity in sentencing between crack and powder cocaine. Given that the Court should exercise its discretion and not grant the defendant a sentence reduction for the public safety reasons delineated above, it need not address this claim. Even if it did, though, the defendant's contention is meritless.

The argument fails because *Booker* and *Kimbrough* may not be applied in a § 3582(c)(2) proceeding as a basis for reducing a sentence below the amended guideline range. Section 3582(c)(2) allows a court to reduce a sentence based on a retroactive guideline amendment only as authorized by the Sentencing Commission, and the Commission has limited the extent of such a reduction to the application of the amended guideline range or a reduction comparable to the extent of a previously granted reduction below the earlier guideline range.

### 1. Section 3582(c)(2) Limits Sentencing Reductions Based on Retroactive Guidelines to Those Authorized by the Sentencing Commission.

In 18 U.S.C. § 3582(c)(2), Congress created a "narrow exception to the rule that final judgments are not to be modified." *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003). Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In the Sentencing Reform Act, Congress specifically delegated to the Sentencing Commission the authority to determine when, and to what extent, a sentencing reduction is allowed. Under 28 U.S.C. § 994(u), when the Commission amends the guidelines, the Commission "shall specify in what circumstances and by what amounts the sentences of

prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). As the Supreme Court has explained, under this provision, "Congress has granted the Commission the unusual and explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." *Braxton v. United States*, 500 U.S. 344, 348 (1991) (citing § 994(u); emphasis omitted). Thus, under the express statutory language of § 3582(c)(2) and § 994(u), the Commission's policy statements that implement the statute's authorization of retroactive sentence reductions are binding, just as the statutory restrictions on reductions below a mandatory minimum are binding. *See United States v. Walsh*, 26 F.3d 75, 77 (8th Cir. 1994) ("Congress has made the policy statements set forth in § 1B1.10 the applicable law for determining whether a district court has the authority to reduce a sentence in this situation."); *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006) ("Because § 3582(c) limits the substantive authority of the district court, it is a real 'jurisdictional' rule rather than a case-processing requirement.").

**2.      The Statute and Policy Statements Prohibit a Reduction Below the Floor Set by the Sentencing Commission.**

As explained above, § 3582(c)(2) does not provide for full resentencing of defendants. In its recent revision to the policy statement governing sentencing reductions under § 3582(c)(2), the Sentencing Commission made clear that proceedings under the statute "do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3); *see United States v. Bravo*, 203 F.3d 778, 781 (11th Cir. 2000) (Section 3582(c)(2) "'do[es] not contemplate a full de novo resentencing'") (quoting *United States v. Cothran*, 106 F.3d 1560, 1562 (11th Cir. 1997)); *see also United States v. McBride*, 283 F.3d 612, 615 (3d Cir. 2002); *United States v. Jordan*, 162

F.3d 1, 4 (1st Cir. 1998); *United States v. Torres*, 99 F.3d 360, 361 (10th Cir. 1996).

Rather than authorizing a full reexamination of a defendant's sentence, the Sentencing Commission has placed explicit limits on the extent of a sentencing reduction permissible under § 3582(c)(2), as noted above. Thus, the Commission, consistent with the authorization provided by Congress, has set a floor below which a reduced sentence may not fall. In short, 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 are narrow provisions which permit a limited reduction of sentence, while prohibiting a complete reevaluation of the sentence. *See, e.g., United States v. Hasan*, 245 F.3d 682, 685-86 (8th Cir. 2001) (en banc) (reduction below the amended guideline range is not permitted); *Bravo*, 203 F.3d at 781 (court was not permitted to "depart downward . . . to an extent greater than that authorized under § 3582(c) based on the amended guideline provision").

### 3.    *Booker* and *Kimbrough* Did Not Affect the Limits on Sentencing Reductions Under Section 3582(c)(2).

In *Booker*, the Court held that the Sixth Amendment, as construed by the Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the federal Sentencing Guidelines, under which the sentencing court rather than the jury found facts that established the mandatory guideline range. *Booker*, 543 U.S. at 230-45. The Court remedied that constitutional defect by severing the statutory provisions that made the guideline range mandatory, resulting in a regime in which the Guidelines are advisory, and courts are to consider the guidelines and the other factors in 18 U.S.C. § 3553(a) in selecting an appropriate sentence. *Id*. at 245-68; *see Gall v. United States*, 128 S. Ct. 586, 594 (2007).

Nothing in *Booker* expands the scope of sentencing reductions under § 3582(c)(2). As an

initial matter, even before *Booker*, the Guidelines were not mandatory in § 3582(c) proceedings.

Judges were never required to reduce a sentence. Rather, § 3582(c)(2) states that a court "may"

reduce the term of imprisonment. Nor, if courts did so, were they required to reduce a sentence

to the full extent permitted by the retroactive guideline amendment. Instead, judges were to

"consider[] the factors set forth in Section 3553(a) to the extent that they are applicable" and

reduce the sentence "if such a reduction is consistent with the applicable policy statements issued

by the Sentencing Commission." 18 U.S.C. 3582(c)(2). Thus, the § 3553(a) factors were always

the guiding principle under § 3582(c)(2), with the sole limitation that a reduction must accord

with the Commission's policy statements.

 *Booker* had no direct effect on § 3582(c)(2). *Booker's* constitutional holding applied the

now-familiar rule that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt." *Booker*, 543 U.S. at 231 (quoting *Apprendi*, 530 U.S. at

490). That rule has no application to proceedings under § 3582(c)(2), which can only decrease –

not increase – the defendant's sentence. Moreover, the limits § 3582(c)(2) and U.S.S.G.

§ 1B1.10 impose on the extent of reductions are, at most, the equivalent of mandatory minimum

sentences, which the Sixth Amendment permits within an otherwise-authorized sentencing range.

*See Harris v. United States*, 536 U.S. 545 (2002).

 *Booker's* remedial holding is likewise inapplicable. *Booker* applies to full sentencing

hearings – whether in an initial sentencing or in a resentencing where the original sentence is

vacated for error. The Court excised and severed the provision that made the Guidelines

mandatory in those sentencings, 18 U.S.C. § 3553(b). It also excised the related provision on

17

appellate review, 18 U.S.C. § 3742(e). "With these two sections excised (and statutory cross-references to the two sections consequently invalidated)," the Court held, "the remainder of the Act satisfies the Court's constitutional requirements." 543 U.S. at 259. Section 3582(c)(2) contains no cross-reference to § 3553(b) and therefore was not excised by *Booker*. Nor is there anything else in *Booker* that directly addresses § 3582 proceedings.

The *Booker* Court applied its advisory guidelines remedy to cases in which no Sixth Amendment violation existed, concluding that Congress would not have wanted the Guidelines to be mandatory in some contexts and advisory in others. 543 U.S. at 266. The Court rested its conclusion on two observations, neither of which is applicable to reduction proceedings under § 3582(c)(2). The first was that Congress would not have wanted to "impose mandatory . . . limits on a judge's ability to reduce sentences," but not to "impose those limits upon a judge's ability to increase sentences." *Id*. (emphasis in original); *see id*. (Congress would not have wanted such "one-way lever[s]"). But Congress clearly intended § 3582(c)(2) to be a "one-way lever" – it gives the court the option to leave a defendant's sentence alone or to reduce it, but does not permit the court to increase the sentence. Second, the Court observed that rendering the Guidelines partially advisory and partially mandatory in federal sentencings would engender significant "administrative complexities." *Id*. Given the limited scope of a proceeding under § 3582(c)(2), none of the significant "administrative complexities" is present that led the Supreme Court to require all guideline provisions to be advisory at full sentencing proceedings. *Booker*, 543 U.S. at 266. To the contrary, holding that *Booker* requires full resentencings whenever a guideline is made retroactive – in many cases years after the original sentencing – would create major administrative complexities and would vastly expand the intended scope of a

18

sentencing reduction under § 3582(c)(2).

Section 3582(c)(2)'s direction that the court "shall consider the factors in section 3553(a) to the extent that they are applicable" also does not aid the defendant.  Although one of the factors in § 3553(a) is the guideline range, and *Booker* made that range advisory, the still-valid statutory language in § 3582(c)(2) requires courts to consider the § 3553(a) factors (including the Guidelines) when determining whether and by how much to reduce the sentence, "consistent with applicable policy statements issued by the Sentencing Commission."  The Commission has made clear that courts are to consider the § 3553(a) factors in determining whether a reduction is warranted and "the extent of such reduction, *but only within the limits*" of § 1B1.10.  U.S.S.G. § 1B1.10, app. note 1(B)(I) (emphasis added).

Nothing in the Supreme Court's recent decisions in *Gall v. United States*, 128 S. Ct. 586 (2007), or *Kimbrough v. United States*, 128 S. Ct. 558 (2007), affects this analysis.  Both decisions reaffirmed *Booker*'s remedial holding that the Guidelines are advisory and that sentences are subject to appellate review for reasonableness, and both decisions proceeded to apply that remedial holding to the questions before them.  Because, as explained above, *Booker* does not apply to § 3582(c) proceedings, the applications of *Booker*'s remedial opinion in *Gall* and *Kimbrough* do not apply in such proceedings either.

A recent decision of the Third Circuit is persuasive.  In *United States v. Wise*, 515 F.3d 207 (3d Cir. 2008), defendants argued that they could gain relief under the crack amendments immediately, even though the Sentencing Commission in Amendment 713 provided that the crack amendments would not become listed in § 1B1.10(c) as retroactive until Amendment 713's effective date of March 3, 2008.  The Third Circuit ruled that defendants could not obtain

immediate relief under § 3582(c)(2) because § 1B1.10(c) did not yet list the crack amendments.

*Id*. at 220-21.  The Court stated:

> Some may argue that, because the Guidelines are no longer mandatory, defendants need not wait to apply for relief under § 3582(c)(2).  That fundamentally misunderstands the limits of *Booker*.  Nothing in that decision purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines.  As we have stated before, "[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2)."  *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir.1995).

*Wise*, 515 F.3d at 221 n.11; *see id*. at 220 ("The Guidelines are no longer mandatory, but that

does not render optional" statutory directives).  Under this persuasive reasoning, and under the

plain language of § 3582(c)(2), the Sentencing Commission's determinations regarding whether

and to what extent a sentence may be reduced must be respected.  Other courts in this circuit and

elsewhere that have addressed Amendment 706 agree that *Booker* is inapplicable.  *See, e.g.,*

*United States v. Cruz*, 2008 WL 539216, at *2-5 (E.D.N.Y. Feb. 27, 2008) (holding that a

reduction in sentence is not authorized if there has been no change in the guideline range, and

*Booker* is inapplicable to permit greater relief); *United States v. Veale*, 2008 WL 619176, *3

(N.D.N.Y. Mar. 3, 2008); *United States v. Davis*, 2008 WL 660277, *2 (M.D. Fla. Mar. 6, 2008);

*United States v. Rivera*, 2008 WL 576764, at *4 (E.D. Pa. Mar. 3, 2008); *United States v.*

*Hopkins*, 2008 WL 504002, at *1 (N.D. Iowa Feb. 21, 2008).[5]

---

[5] Although not cited by the defendant, the government notes that in *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), the Ninth Circuit incorrectly concluded that limiting the extent of a § 3582(c)(2) sentencing reduction to that prescribed by the Sentencing Commission amounts to a mandatory application of the Sentencing Guidelines that is prohibited by *Booker*. For the reasons stated above, *Hicks*' analysis is flawed and should not be followed by this Court. *Hicks* fails to consider that the context of a § 3582(c)(2) proceeding, in which a court may only

The conclusion that *Booker* does not apply in proceedings under § 3582(c)(2) is also consistent with the courts of appeals' unanimous holding that defendants whose convictions are final have no right to resentencing under *Booker* on collateral review under 28 U.S.C. § 2255. *See Cirilo-Muñoz v. United States*, 404 F.3d 527, 532-33 (1st Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 141-44 (2d Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 613-16 (2005); *United States v. Morris*, 429 F.3d 65, 66-67 (4th Cir. 2005); *United States v. Gentry*, 432 F.3d 600, 602-05 (5th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005); *In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir. 2007). It would be incongruous if courts interpreted the congressional scheme in § 3582(c)(2), which provides for much more limited relief than § 2255, concerns only sentence reductions, and

---

reduce a sentence or leave it undisturbed, is markedly different from the determinations under mandatory Guidelines which could increase a defendant's sentence – and thus run afoul of the Sixth Amendment – that were addressed in *Booker*. *Hicks* also fails to recognize that a sentencing reduction under § 3582(c)(2) is not a full resentencing proceeding, but a limited mechanism only for reducing a sentence to account for a retroactive guideline amendment. Likewise, *Hicks* ignores the fact that § 3582(c)(2) incorporates into the statute the limits in § 1B1.10, and that those statutory limits are binding on sentencing courts. Perhaps most significantly, *Hicks* did not have before it the revised text of and commentary to § 1B1.10, which now make clear the proper exercise of the Sentencing Commission's statutory authority to restrict the extent of sentencing reductions.

The defendant does cite *United States v. Polanco*, 2008 WL 144825 (S.D.N.Y., Jan. 15, 2008), but this case is of no moment here because the court did not reach the issue of whether *Booker* applies to a § 3582 motion for reduction in sentence, holding that a decision on that issue was unnecessary. *Id.* at *2-3. Because it neither addressed nor resolved the arguments raised by this issue, the *Polanco* decision is not at all persuasive authority on this point.

raises no Sixth Amendment concerns, as triggering a full *Booker* resentencing.

Indeed, given that *Booker* does not apply to the many defendants whose sentences were final when *Booker* was decided, it would be unfair to apply *Booker* to that subset of those defendants whose sentences are being lowered under Amendment 706. Section 3582(c)(2) was designed only to permit courts to reduce defendants' sentences to account for a retroactive guideline amendment. To grant these defendants a further reduction that is not afforded to all other similarly situated defendants would produce the unwarranted sentencing disparities Congress sought to eliminate in the Sentencing Reform Act. It would also entail enormous additional cost and effort in resentencing tens of thousands of inmates, even though § 3582(c)(2) by its terms does not authorize a full resentencing.

Accordingly, while this Court should consider the § 3553(a) factors in determining whether and to what extent to reduce the sentence, it must abide by the limitations on sentencing reductions directed by Congress. *Booker* does not apply, and there is no authorization for this Court to revisit its earlier sentencing determinations.

Finally, should this Court disagree and conclude that *Booker* is applicable here, it should exercise its discretion not to change the defendant's sentence, for the reasons set forth above, or at least limit any sentence reduction to a sentence within the amended guideline range. The Sentencing Commission's determinations, which always must be considered in sentencing, *see* 18 U.S.C. § 3553(a), deserve particular respect in this context, where Congress specifically delegated to the Commission the authority to amend the Guidelines and to "specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). It is appropriate to abide by these restrictions,

22

given that the Commission has properly determined that § 3582(c)(2)'s exception to the general

rule of finality in criminal litigation should extend only to application of the newly amended

guideline, not to relitigation of other aspects of the sentence.  *See* U.S.S.G. § 1B1.10(a)(3)

(proceedings under § 3582(c)(2) "do not constitute a full resentencing of the defendant").

Adherence to the limits imposed by the Commission will also avoid disparity in sentencing

among similarly situated defendants.  *See* 18 U.S.C. § 3553(a)(6).  And it will avoid substantial

unfairness to countless defendants who may not gain reconsideration of their final sentences

because they did not enjoy the fortuity of having a retroactive guideline amendment applied to

one aspect of their sentences.


## CONCLUSION

For the foregoing reasons, the defendant's motion for reduction in sentence should be

denied.


Respectfully submitted,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY


By:     /S/_____
PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct26654
915 Lafayette Blvd.
Bridgeport, CT 06604
(203) 696-3000


23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c) to be served on the following on April 24, 2008:

by first class mail, postage prepaid:

Joseph W. Martini, Esq.
Wiggin and Dana LLP
PO Box 1832
New Haven, CT 06508-1832

by hand delivery:

Raymond Lopez, Sr. Probation Officer
U.S. Probation
915 Lafayette Blvd.
Bridgeport, CT 06604

_____    /S/_____
                                    PAUL A. MURPHY
                                    ASSISTANT UNITED STATES ATTORNEY