UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>    Plaintiff, | : <br> : <br> : | No. 3:01CR126 (SRU) |
| -v- | : <br> : | June 2, 2008 |
| KENNETH BRICKHOUSE<br>    Defendant. | : <br> : | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS
### 18 U.S.C. § 3582(c)(2) PETITION FOR RESENTENCING

On March 4, 2008, defendant Kenneth Brickhouse petitioned this Court pursuant to 18 U.S.C. § 3582(c)(2), amended U.S.S.G. § 2D1.1(c) (effective November 1, 2007), amended U.S.S.G. § 1B1.10 (effective March 3, 2008), and *Kimbrough v. United States*, 128 S.Ct. 558, 566 (2007), for a modification in sentence below the Guidelines range called for by the newly enacted, and retroactive, Guideline amendments related to crack cocaine offenses, or, alternatively, for a sentence at the low end of that range. On April 24, 2008, the government filed its response, objecting to any and all forms of resentencing. The government argues that the Guidelines are mandatory upon the filing of a § 3582(c)(2) petition, and that the Court has no discretion under *Kimbrough* (or *Booker*) to impose a non-Guidelines amended sentence. The government also argues that resentencing Brickhouse amounts to a public safety risk for which no relief should be afforded.

There are two flaws with the government's positions. First, "as by now should be clear, [a] mandatory system is no longer an open choice." *United States v. Booker*, 543 U.S. 220, 263 (2005). That is, the Guidelines are advisory and this Court has discretion to grant a non-Guidelines amended sentence. *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007) ("[m]andatory Guidelines no longer exist, in this context or any other"); *United States v. Stokes*,

2008 WL 938919, at *4, n. 4 (M.D. Fla. April 7, 2008) (same); *Hicks v. United States*, 2008 WL 630067, at *1 (D. D. C. Mar. 6, 2008) ("The holding of *Hicks* is certainly persuasive . . . and I would be inclined to follow it"); *United States. v. Forty Estremera*, 498 F. Supp. 2d 468, 471-472 (D. Puerto Rico 2007) ("*Booker* applies to § 3582(c)(2) resentencing"). Second, the government seeks to, under the label of public safety, again punish Brickhouse for crimes already factored into the length of his original crack cocaine sentence.

For the reasons that follow, *Booker-Kimbrough* applies to § 3582(c)(2) proceedings; this Court has the sentencing discretion to grant a non-Guidelines amended sentence; and, at the very least, Brickhouse should be afforded the benefit of a two level crack cocaine reduction in sentence.

## II.    ARGUMENT

At the outset, there is no dispute between the government and Brickhouse that he "is eligible for a two level reduction in his guideline range under the crack amendments." *See* Govt. Br. 4/24/08 at p. 1.[1] What is in dispute, however, is: (1) the proper application of *Booker-Kimbrough* in the § 3582(c)(2) context, and (2) the proper application of the "public safety" provision located within amendments themselves. Each issue is addressed in turn.

### A.    *Booker-Kimbrough* Applies To § 3582(c)(2)

Although the government concedes that Brickhouse is eligible for a reduction in sentence, the government asserts that *Booker-Kimbrough* does not apply during § 3582(c)(2) proceedings; that the Guidelines are mandatory in this setting (foreclosing any possibility of a non-Guidelines amended sentence); and, finally, that the Sentencing Commission may

---

[1] Conceding that Brickhouse is eligible for resentencing, the government simultaneously recognizes that § 3582(c)(2) is jurisdictionally triggered and satisfied, and that Brickhouse's eligibility even comports with U.S.S.G. policy statement § 1B1.10, which provides for resentencing, in part, where "the guideline range

effectively override recent United States Supreme Court precedent through its re-imposition of a mandatory Guideline regime. The government misreads *Booker-Kimbrough*.

The United States Supreme Court clearly and recently stated: "We hold that under *Booker*, the cocaine Guidelines, like all Guidelines, are advisory only." *Kimbrough*, 128 S.Ct. at 564 (emphasis added). Similarly stated, "as by now should be clear, [a] mandatory system is no longer an open choice." *Booker*, 543 U.S. at 263. Here, nevertheless, the government seeks a mandatory application of the Guidelines in some situations, but advisory in others. Not only is that dichotomous position squarely at odds with the Supreme Court precedent, but the Supreme Court, itself, has rejected it twice before. "Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others." *Booker*, 543 U.S. at 266; *see also Kimbrough*, 128 S.Ct at 570 ("The Government acknowledges that the Guidelines 'are now advisory' . . . . [b]ut the Government contends that the Guidelines adopting the 100--to--1 ratio are an exception to the 'general freedom that sentencing courts have to apply the § 3553(a) factors.'"). Simply put, the Guidelines are advisory.

In fact, this same argument for a mandatory application of the Guidelines in § 3582(c)(2) proceedings was flatly rejected by the only appellate court analyzing *Booker's* substantive relationship with § 3582(c)(2). *See United States v. Hicks*, 472 F.3d 1167, 1171-72 (9th Cir. 2007) ("The dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while "reduction proceedings," or "modifications," rely on a mandatory Guideline system, is false . . . . [m]andatory Guidelines no longer exist, in this context or any other."). And other district courts agree, or would agree. *United States v. Polanco*, 2008 WL 144825, at *2 (S.D.N.Y. Jan. 15, 2008) (criticizing mandatory Guidelines during § 3582(c)(2)

---

applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manuel." *See* 18 U.S.C. 3582(c)(2); U.S.S.G. § 1B10.10(a)(1).

proceedings); *Stokes*, 2008 WL 938919, at *4 (*Booker-Kimbrough* applies at § 3582(c)(2) proceedings); *Hicks,* 2008 WL 630067, at *1 ("The holding of *Hicks* is certainly persuasive . . . and I would be inclined to follow it"); *Forty Estremera*, 498 F. Supp. 2d at 471-472 ("*Booker* applies to § 3582(c)(2) resentencing").

Perhaps above all, though, is that a mandatory Guidelines regime under § 3582(c)(2) contradicts both reason and purpose. There can be no doubt that the very purpose of § 3582(c)(2) is for a judge to impose a new sentence. And in doing so, the same judge endeavors to the proverbial sentencing process of calculating the defendant's Guidelines range, reconsidering the same § 3553(a) factors, and ultimately imposing a new sentence. *See Hicks*, 472 F.3d at 1171. Fundamentally, then, the acts of resentencing, and original sentencing, are so inextricably joined in purpose and effect, that there is no need to elevate form over substance, particularly when it comes to the imposition of prison terms.

In support of its position that the Guidelines are mandatory, the government cites several pre-*Booker* decisions, along with non-binding, and unpublished, decisions of late. Notwithstanding their precedental and analytical shortcomings, there is no need for extensive distinguishing of that lot. The Supreme Court decisions of *Booker* and *Kimbrough* are enough, and control. To the extent, however, that this Court were to consider other courts' views concerning the intersection between § 3582(c)(2) and *Booker-Kimbrough*, only one Circuit Court has addressed, and published, a formal opinion on the issue. *See Stokes*, 2008 WL 938919, at *4, n. 4 ("the Ninth Circuit is the only court of appeals to address the question so far"). The Ninth Circuit, in *United States v. Hicks*, as discussed and cited above, flatly held: "*Booker* makes clear that the Guidelines are no longer mandatory in *any* context - its effect is not restricted to the 'de novo resentencing' which the government seeks to distinguish. *Booker* was not a mere statutory

change which can be set aside to allow us to pretend it is 1993 for the purpose of modifying Hicks' sentence." *Hicks*, 472 F.3d at 1173 (emphasis in original). Furthermore, the same court concluded that "to the extent that the [crack amendment] policy statements are inconsistent with *Booker* by requiring that the Guidelines be treated as mandatory, the policy statements must give way." *Id.* And this Court should hold the same.

While *Hicks* is the only Court of Appeals decision directly on point, the Third, Fourth, and Eleventh Circuits have all touched tangentially on a similar § 3582(c)(2)-*Booker* issue, but only insofar as to decide if *Booker*, itself, could provide a court with jurisdiction, when § 3582(c)(2) was not otherwise triggered by a Guidelines amendment. The court in *Stokes* addressed this crucial difference:

> The Court recognizes the rules announced in the Government's cited cases; however, the Court is of the opinion that these cases address an issue that is readily distinguishable from the facts of this case. Indeed, the Court agrees with the Government that, under Eleventh Circuit precedent, a court generally cannot assert jurisdiction to reduce a defendant's sentence under § 3582(c)(2) merely by virtue of the United States Supreme Court's announcement in *Booker* that the Guidelines are advisory. That is, *Booker* itself does not create jurisdiction. However, in this case, the issue is different. The Court has already found that § 3582(c)(2) is properly triggered by the Sentencing Commission's lowering of the guidelines range applicable in Defendant's case, without the aid of any *Booker* considerations. Thus, unlike in *Moreno* and *Riley*, the Court here is properly deriving its authority to grant a sentence reduction from the statute, not solely by virtue of the advisory nature of the Guidelines.

*Stokes*, 2008 WL 938919 at *4 (applying *Booker-Kimbrough* to § 3582(c)(2) crack cocaine resentencing, and explicitly rendering Guidelines commentary as advisory). That distinction between independent § 3582(c)(2) jurisdiction, and *Booker's* legitimate application, was addressed by *Hicks* as well: "*Price*, [438 F.3d 1005, 1007 (10th Cir. 2006] and the other cases cited by the government, address a wholly distinct issue: whether *Booker* itself provides the requisite authority to reopen sentencing proceedings under § 3582(c) . . . . [t]his position

5

completely misapprehends appellant's argument." *See Hicks*, 472 F.3d at 1171. Those cases are inapposite to the instant matter.[2]

The government, here, concedes that the threshold requirements of § 3582(c)(2) are met. *See* Govt. Br. 4/24/08 at p. 1 (Brickhouse "is eligible for a two level reduction in his guideline range under the crack amendments."). And, in any event, Brickhouse does not argue that *Booker-Kimbrough*, alone, may trigger § 3582(c)(2) jurisdiction. Rather, once § 3582(c)(2) jurisdiction is properly triggered through a Guidelines amendment, *Booker-Kimbrough* defines the scope and extent of that resentencing. And that is the posture of this case. Therefore, the Court has independent § 3582(c)(2) jurisdiction by virtue of the retroactive Guideline amendments, and *Booker-Kimbrough* defines the extent of their application. Thus, the Court has discretion to grant a non-Guidelines amended sentence.[3]

**B.    The 100:1 Remedy**

The government, rather than challenge the actual disparity between crack and powder cocaine offenses, urges this Court not to resentence Brickhouse because his criminal history

---

[2] At pages 19-20 of the government's brief, for example, it cites *United States v. Wise*, 2008 WL 361089 (3d Cir. Feb. 12, 2008), as persuasive authority for not applying *Booker* to § 3582(c)(2). That case only addressed the narrow issue of whether *Booker* itself could provide a court with § 3582(c)(2) jurisdiction prior to a Guidelines amendment taking effect. The government misapplies *Wise* to the instant matter, because jurisdiction is already present here.

[3] To the extent this Court finds *Booker-Kimbrough* inadequate, the Second Circuit has not yet had occasion for analysis of the *Booker-Kimbrough* nexus with § 3582(c)(2), though a small number of district courts in this Circuit have. *Compare e.g. Polanco*, 2008 WL 144825, at *2 ("The effectiveness of these limitations is yet to be tested; it would be, to say no more, ironic if the relief available to a defendant who received a sentence that is now recognized to have been unconstitutional because imposed under mandatory guidelines based on non-jury fact findings and unwise because the guideline under which he was sentenced was excessively severe, can be limited by a still-mandatory guideline"), *with United States v. Cruz*, 2008 WL 539216 (E.D.N.Y. Feb. 27, 2008) (declining the application of *Booker* to § 3582(c)(2) proceedings), *but see Simon v. United States*, 361 F. Supp. 2d 35, 37-41 (E.D.N.Y. 2005). And district courts outside this Circuit are similarly mixed. *Compare e.g. Forty Estremera*, 498 F. Supp. 2d at 471-472 (Guidelines advisory in § 3582(c)(2) proceedings); *Stokes*, 2008 WL 938919, at *4 (same), *Hicks*, 2008 WL 630067, at *1, *with United States v. Julien*, 2008 WL 33340, at *1-2 (D. Me. May 5, 2008) (Guidelines mandatory).

poses a public safety risk. The government, in so doing, fails to acknowledge that this Court already considered Brickhouse's criminal history when it fashioned the full extent of Brickhouse's original crack cocaine sentence. That same criminal history, in other words, already contributed to Brickhouse's lengthy sentence of 132 months. And simply put, the sole purpose of the crack cocaine amendments is to remedy the disparate 100:1 sentencing ratio, not criminal histories. Brickhouse's criminal history has nothing to do with the 100:1 ratio. The government, by focusing on criminal history, then, not only sidesteps the rationale behind the 100:1 amendment remedy, but also seeks to doubly penalize Brickhouse.[4]

The government advanced a similar "public safety" argument in *United States v. Ayala*, -- F. Supp. 2d --; 2008 WL 555525 at *2 (W.D. Va. Feb. 26, 2008) ("the government points to what it characterizes as the defendant's 'disturbing criminal history' and failure to accept responsibility . . . [t]he defendant has prior convictions for robbery in 1997 at aged 15, theft of a purse the same year, domestic assault, and resisting arrest."). Noting that criminal history has nothing to do with the crack amendments, that court commented that "[u]nquestionably, these were serious offenses and I took them into consideration when I originally sentenced the defendant . . . [yet] [t]he guidelines provide a mechanism for consideration of these prior convictions through calculation of a criminal history score . . . [and] [t]o do as the government suggests, would doubly penalize the defendant for his criminal history." *Id.* at *2. That court reduced that defendant's sentence. *Id.*

Brickhouse's criminal history was already factored into his original crack cocaine sentence, through criminal history enhancements, at the time of his original crack cocaine

---

[4] To clarify, Brickhouse's March 4, 2008 brief, due to a clerical error, incorrectly calculated his amended Guidelines' range at 101-123 months. Rather, the amended Guidelines' range is, and should be, 111-123 months, as correctly noted in the government's response brief of April 24, 2008; and, as noted in the same, his original sentence was 132 months (not 138).

sentencing. The Court should not countenance a double penalty, particularly where the purpose of the crack amendments is to remedy the 100:1 disparity between crack and cocaine powder sentences. Brickhouse's resentencing falls squarely within 100:1 remedy, as the 3.7 grams of crack for which was attributed to him significantly accounted for his original 132 month sentence.

Moreover, the government underemphasizes the negative impact that Brickhouse's upbringing had on his juvenile indiscretions. But as socioeconomic studies indicate, there is a positive correlation among juveniles and crime, in the presence of poverty, in a violent neighborhood, early exposure to crime, race, and absentee parenting – factors all in keeping with Brickhouse's formative years. More specifically:

> The findings from our study suggest that violent delinquency is largely a product of individual status characteristics, family disadvantage, community disadvantage, weakened family bonds, and exposure to some elements of a criminogenic street milieu. More specifically, we find evidence consistent with the argument that minorities and disadvantaged families experience constrained residential choices, resulting in a greater likelihood of residing in disadvantaged communities. Living in these communities subsequently translates into a higher likelihood of youth violence.

Stacy De Coster et al., *Neighborhood Disadvantage, Social Capital, Street Context, and Youth Violence*, THE SOCIOLOGICAL QUARTERLY, No. 47, p. 739-40 (2006) (attached as exhibit A). And that:

> Families do not operate in a social vacuum; rather, they are part of a more elaborate social context. Criminological research on the family rarely has reflected this reality. Most studies have examined the family with little regard for how its effects may vary according to features of the social context. Drawing from several lines of criminological theory, our analysis sought to correct this by testing the hypothesis that family effects on crime would be significantly amplified by community disadvantage. For the measure of overall family problems, the analysis supported this hypothesis. As community disadvantage increased, the effects on crime of family problems became stronger. This pattern was evident for both measures of community disadvantage that were considered: the objective level of community poverty (as indicated by U.S. census data) and

> the perceived inadequacy of the community as a place to raise children (as rated by a parent). Moreover, the interactions that were observed were substantively important to the family-crime relationship. An increase of one standard deviation in community poverty, for example, increased the effect of overall family problems on crime by nearly 40 percent.

*See e.g.* Carter Hay et. al., *The Impact of Community Disadvantage on the Relationship Between the Family and Juvenile Crime*, JOURNAL OF RESEARCH IN CRIME AND DELINQUENCY, Vol. 43, No. 4, p. 345-46 (2006) (attached as Exhibit B).

The foregoing studies while relevant in their own right, are of special significance to the instant matter. That is, at Brickhouse's original sentencing, the Court declined (pre-*Booker*) a downward departure based on Brickhouse's tumultuous upbringing because, according to the Court, defense counsel's argument was "lacking in foundation . . . . [with] no evidence from which I can draw a causal connection between the clearly difficult childhood that Mr. Brickhouse endured and the condition or the circumstances surrounding the commission of the present offenses." *See* Sentencing Hearing, 1/24/02, p. 31. That causal connection is no longer required post-*Booker*. *See Gall v. United States*, 128 S. Ct. 586, 594-95 (2007). However, even if it were required, evidence of that causal connection is now before the Court.

Finally, is that Brickhouse's conduct while in jail is illustrative of the man he wants to be – not the kid he used to be. In fact, Brickhouse took to heart the Court's advice that "[y]ou need to get your high school diploma while you're in there" and "to use your time profitably." *Id.* at 42. Brickhouse has done just that and has obtained his GED. Moreover, Brickhouse has no disciplinary record while in jail, and even participates in the Inmate Companion Program protecting the life of an acutely ill inmate, and occupational program Industrial Familiarization

(attached as Exhibit C). All told, Mr. Brickhouse is a qualified candidate and should be resentenced to a non-Guidelines amended sentence, or at the low end of his amended range.[5]

## III. CONCLUSION

Based on the foregoing, Defendant respectfully petitions for resentencing on the basis that the Sentencing Commission has retroactively amended, and reduced by two-levels, the base offense level applicable to cocaine base crimes, as calculated in the Federal Sentencing Guidelines Manual. Those amendments, all being applicable to Mr. Brickhouse, are retroactively effective on March 3, 2008. Defendant requests a non-guidelines range below 111 months, and, at the very least, a sentence at the bottom end of his amended range of 111-123 months, for the reasons articulated herein and in Defendant's March 4, 2008 Memorandum of Law In Support Of Motion For Resentencing.

DEFENDANT,
KENNETH BRICKHOUSE

By: /s/ Joseph W. Martini (CT07225)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT 06508-1832
Phone: (203) 498-4400
Fax: (203) 782-2889

---

[5] To the extent the Court were to consider a non-Guidelines reduction, while still relying on the § 3553(a) factors, it is counsel's understanding that after Brickhouse was sentenced by this Court, he was sentenced to six years on corresponding state charges, and counsel further understands that he served three years of that sentence and was then transferred to federal custody.

## CERTIFICATE OF SERVICE

      I hereby certify that I caused a copy of DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS 18 U.S.C. § 3582(c) PETITION FOR RESENTENCING to be served on the following on June 2, 2008.

First class mail, postage prepaid, and by email:

Paul A. Murphy
Assistant United States Attorney
Office of the United States Attorney
915 Lafayette Blvd.
Bridgeport, CT 06604

by e-mail

Raymond Lopez, Sr. Probation Officer
U.S. Probation
915 Lafayette Blvd.
Bridgeport, CT 06604

_____
Joseph W. Martini

\19673\1\714519.1